IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
November 7, 2011 Session

## MASQUERADE FUNDRAISING, INC., v. STEVE STOTT

**Appeal from the Circuit Court for Knox County**
**No. 2-252-10    Hon. Harold Wimberly, Jr., Judge**

**No. E2011-00309-COA-R3-CV-FILED-FEBRUARY 14, 2012**

The Trial Judge held that venue for the cause of action was not in Knox County. Plaintiff, on appeal, contends that defendant either waived the issue of venue, or the record establishes that Knox County was the proper venue for the cause of action. On appeal, we hold that venue is properly in Knox County and reverse the Judgment of the Trial Court.

**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Circuit Court Reversed.**

HERSCHEL PICKENS FRANKS, P.J., delivered the opinion of the Court, in which CHARLES D. SUSANO, JR., J., and D. MICHAEL SWINEY, J., joined.

Shelley S. Breeding and David L. Dothard, Knoxville, Tennessee, for the appellant, Masquerade Fundraising, Inc.

Christopher D. Heagerty and Kristi M. Davis, Knoxville, Tennessee, for the appellee, Steve Stott.

### OPINION

This action originated with an action filed by Plaintiff, Masquerade Fundraising Inc., ("Masquerade") against defendant, Steve Stott by a civil summons filed in Sessions Court on September 16, 2009. Stott's attorney filed a counterclaim in the form of an "Amended

Civil Summons" against the plaintiff, ordering the plaintiff to appear before the Sessions Court on the 17th day of May, 2010 at 1:00 p.m. to answer this action brought by Steve and Katherine Stott for recovering of funds owed in the amount of $25,000.00. The respective warrants contained notations that the plaintiff's claim was dismissed and Stott's claim was non-suited.

Masquerade appealed the case to the Circuit Court, but before the case was transferred to Circuit Court, Stott filed a Motion for More Definite Statement in Sessions Court, and also filed a Motion for Continuance. Then in Circuit Court, Stott filed a Motion to Dismiss for Improper Venue, stating that he did not live in Knox County and the action did not arise in Knox County. He filed an Affidavit, and stated that he had never lived in Tennessee, and that he lived in Colorado, and he did not have a written contract of employment with Masquerade, but that he was an independent contractor.

Masquerade filed a Supplemental Response, stating that Stott's objection to venue had been waived, and the Trial Court held a hearing on the Motion, and entered an Order of Dismissal, stating that venue was improper.

Masquerade appealed to this Court and raised these issues:

I.      Whether Stott waived any objection he had to venue?

II.     Whether venue was proper in Knox County?

Masquerade argues that Stott waived any objection he had to venue, because he filed what was essentially a counter-complaint in General Sessions Court, seeking relief from Masquerade, before ever objecting to venue, and he filed two motions after the dismissal in General Sessions (one before the case was transferred to Circuit Court and one after) and did not raise the issue of improper venue. Stott argues that, once the case was appealed to Circuit Court, it was treated as if it originated there as if no other proceedings had taken place, and further that the motions filed after the dismissal in Sessions Court did not go to the merits of the case and should not be deemed as responsive pleadings wherein an issue regarding venue would have to be raised.

As the Supreme Court has previously explained, "[v]enue is the personal privilege of a defendant to be sued in particular counties; it may be waived and is waived by a defendant who defends upon the merits without first interposing an objection to improper venue." *Kane v. Kane*, 547 S.W.2d 559 (Tenn. 1977). While the Tennessee Rules of Civil Procedure

do not apply in General Sessions Court except in specific circumstances,[1] such that Stott was not required to file a formal motion to dismiss based on improper venue in Sessions Court, he was required to raise the issue before defending upon the merits or taking other action going to the merits of the dispute. *See Graham v. Caples*, 325 S.W.3d 578 (Tenn. 2010); *Kane v. Kane*, (both of which involve appeals from General Sessions Court).

Stott argues that once the case was appealed to Circuit Court, it was as if the General Sessions proceedings never occurred, and the case originated in Circuit Court. Stott relies upon *Ware v. Meharry Medical College*, 898 S.W.2d 181 (Tenn. 1995), where the Supreme Court said:

> *De novo* appeals from the general sessions courts differ from other types of appellate proceedings. The circuit court does not review the general sessions court's decision. Rather, it provides the parties an entirely new trial as if no other trial had occurred and as if the case had originated in the circuit court.

A *de novo* review affords a case appealed from General Sessions essentially a new trial. Tenn. Code Ann. § 16-15-729 governs civil appeals from Sessions Courts, and provides:

> **16-15-729. Trial de novo on appeal - Decision on merits. -** No civil case, originating in a general session court and carried to a higher court, shall be dismissed by such court for any informality whatever, but shall be tried on its merits; and the court shall allow all amendments in the form of action, the parties thereto, or the statement of the cause of action, necessary to reach the merits, upon such terms as may be deemed just and proper. The trial shall be de novo, including damages.

As a general rule, cases appealed from the General Sessions Court are treated for all purposes as if the case had originated in the Circuit Court. *See, Ware, B & G Constr. Inc., v. Polk,* 37 S.W.3d 462 (Tenn. Ct. App. 2000). We conclude that the record from the Sessions Court in this case does not establish that defendant waived the issue of venue based on the proceedings in Sessions Court.

Masquerade argues that even if the issue of improper venue was not waived, defendant's position is still without merit, as venue in Knox County was proper. As both parties agree, this action, based on contract, is transitory in nature, and thus venue is controlled by Tenn. Code Ann. §20-4-101, which states that the action may be brought in the county where it "arose" or where the defendant resides or is found. Defendant does not

---

[1] Tenn. R. Civ. P. 1.

reside in Tennessee, but Masquerade argues that the cause of action arose in Knox County, and relies on the case of *Insituform of North American, Inc. v. Miller Insituform, Inc.*, 695 S.W.2d 198 (Tenn. Ct. App. 1985).

In the *Insituform* case, the plaintiff, a corporation headquartered in Shelby County, entered into a sublicense agreement with defendant, a corporation headquartered in Rutherford County, wherein plaintiff licensed defendant to do a particular pipe lining process, and also sold materials and rented equipment to defendant to perform said process. *Id.* The agreement did not address venue, but stated that all notices were to be sent to plaintiff's offices in Memphis, and that all prices quoted by plaintiff to defendant were f.o.b. plaintiff's factory in Memphis. *Id.* Plaintiff filed suit against defendant in Shelby County, alleging that $25,433.30 was owed by defendant, representing unpaid charges for the materials and equipment. *Id.* Plaintiff also alleged a breach of the sublicense agreement by defendant for failing to maintain a certain net worth, and that there were unpaid royalties. *Id.*

Defendant filed a motion to dismiss, alleging that venue was improper in Shelby County, and argued that it did not reside in Shelby County, and that the cause of action did not arise there, because the agreement was executed in Rutherford County. *Id.*

This Court disagreed, stating:

In *Mid-South Milling Co. v. Loret Farms, Inc.*, 521 S.W.2d 586 (Tenn. 1975), our Supreme Court stated that "[i]n order to decide where the cause of action arose, we must determine the type of action with which we are dealing." Id. at 588.

A reading of the first count in plaintiff's complaint reveals that the claim set forth therein arose from defendant's failure to pay plaintiff for materials purchased and equipment rented from plaintiff. The gravamen of that action is clearly one to collect a debt. While the courts of this state have not as yet addressed this question, cases from other jurisdictions have held that where the breach is a failure to pay money due, the debtor should seek the creditor. In *Mendez v. George Hunt, Inc.*, 191 So.2d 480 (Fla. Dist. Ct. App. 1966), it was stated: "In such cases the default and breach consist of the failure to pay the money and the cause of action accrues where the default occurred, which would necessarily be in the county where the creditor resides." Id. at 481 (citations omitted). *See also Lucas Enterprises v. Paul C. Harmon Co.*, 273 Pa. Super. 422, 417 A.2d 720, 721 (1980).

The general terms and conditions that constitute a part of the sublicense agreement state that the material sold by plaintiff to defendant was priced f.o.b. Memphis. The sublicense agreement provides that all notices were to be given to plaintiff at its

offices in Memphis, Shelby County. The affidavit filed by an officer of plaintiff in opposition to the motion to dismiss stated that accounts owing plaintiff by defendant were due and payable in Shelby County. There were no countervailing affidavits in any way contradicting these assertions. Accordingly, we hold that the venue for the first count of plaintiff's complaint lies in Shelby County, the resident county of the creditor, and that the chancellor was in error in dismissing the complaint as to this count.

Insituform, at 200-201.

We went on to hold that plaintiff's second count for breach of the agreement could be joined with the first count to collect a debt, such that venue for both claims would be proper in Shelby County. *Id.* at 201.

Both parties filed supplemental authority after oral arguments were held in this case. Masquerade cited the case of *Ellis v. Minder Music Limited*, 2011 WL 3848627 (Tenn. Ct. App. Aug. 31). However, because it was designated a Rule 10 Memorandum Opinion, it is not to be relied upon or cited as authority in unrelated cases.

Stott submitted the case of *Forrest Erectors, Inc. v. Holston Glass Company, Inc.*, 2011 WL 5550692 (Tenn. Ct. App. Nov. 14, 2011), wherein the plaintiff was a corporation located in Montgomery County and the defendant was a corporation located in Sullivan County, and the claim was for money owed for services rendered in North Carolina. Plaintiff filed suit in Montgomery County, and defendant moved to dismiss for lack of venue. Plaintiff argued that venue was proper where the creditor resides. This Court stated:

> Forrest is correct that the *Nickell* court[2] indicated that if the case was a simple debt collection case, with no dispute about whether or not the defendant owed money to the plaintiff, venue would be proper where the debt was to be paid. The *Nickell* court distinguished *Insituform* from the facts of *Nickell*, however, because there was an issue of whether the defendants were obligated to pay anything at all to *Nickell*. Concluding the plaintiff's residence played no role in the parties' dealings, the *Nickell* court held venue was proper where the action arose and where the defendants resided pursuant to Tenn.Code Ann. § 20–4–101.
>
> We find the facts of the case at bar to be similar to the facts in *Nickell* and *Resource Company* because there is a dispute about whether or not Holston Glass in fact owes any money at all to Forrest. The affidavit submitted by Holston Glass's president

---

[2]*Nickell, Inc., v. Psillas,* 2006 WL 1865018 (Tenn. Ct. App. June 30, 2006).

indicates there is a dispute regarding the quality of Forrest's work and whether or not Forrest completed the job described in the parties' contract. Contrary to Forrest's characterization, this case is not a simple case to collect a liquidated debt, and the cases Forrest relies on where the creditor's residence is determined to be the proper venue are therefore not controlling.

We conclude the cause of action in this case arose in Cherokee, North Carolina, where the construction project is situated. Therefore, pursuant to the express terms of Tenn. Code Ann. § 20–4–101(a), the only proper venue in Tennessee is Sullivan County, where Holston Glass resides. The trial court's judgment granting Holston Glass's motion to dismiss Forrest's complaint is affirmed.

*Id*. at 5 (citations omitted).

In this case, the facts were developed by affidavits filed by defendant Stott and by Tom Everett, president of Masquerade. Stott's affidavit simply states that he has never resided in Tennessee, but at all relevant times, resided in Colorado. He states that he had no written contract of employment with Masquerade, that he was an independent contractor and received no benefits from Masquerade, and that all of his work for Masquerade took place outside Tennessee. He stated that his services included organizing fundraising jewelry shows at hospitals in the western United States, and that the jewelry was shipped to him by Masquerade and other vendors to his residence in Colorado. He also stated that to the best of his knowledge, the suit brought by Masquerade is not for a sum certain nor based upon a sworn account. This is the only proof presented by Stott.

Everett's affidavit states that he is President of Masquerade, and that Stott was present in Knox County in 2006 for a meeting wherein the company was started and organized. Everett stated that Stott actively participated in that meeting where his contract with Masquerade was formed. Everett stated that at that meeting, each person's roles and responsibilities were defined, and that Stott agreed to act as Regional Vice President and to be responsible for a territory in the western United States. Everett stated that all parties agreed that Masquerade would be headquartered in Knox County, and that part of Stott 's duties required him to attend regular meetings in Knox County, and required him to pay a part of his sales as a commission to Masquerade in Knox County. Everett stated that Stott attended the company's annual meeting in Knox County in the summer of 2006, and also attended the meeting the following year in Blount County. Everett stated that Stott reported the results of his fundraising shows to Masquerade headquarters in Knox County, and the office staff there prepared promotional items for his fundraising shows. Everett stated that Stott attended another meeting in Knox County in 2008 during which his overdue commissions were discussed. Everett stated that from 2006-2009, Stott mailed his payments

due for commissions to Masquerade' s headquarters in Knox County, but that Stott failed to remit payment for some of his shows, and owed Masquerade $30,570.21 after he was given all credits due. Everett states that the commissions were due pursuant to the parties' contract and that this was simply an action to collect that debt.

Stott did not file any other affidavits to contradict these factual statements made by Everett. Thus, while there is no written contract between these parties, the only proof in the record is that the parties met in Knox County to organize this company (which they agreed would have its principal place of business in Knox County), and agreed to an oral contract which required Stott to pay commissions on his sales to Masquerade. The parties' oral contract required Stott to make all payments to Masquerade headquarters in Knox County, to report all sales to Masquerade headquarters in Knox County, to attend regular meetings at Masquerade headquarters in Knox County, and that Stott did so for three years, but failed to pay all of the commissions due, thus resulting a debt owing to Masquerade. Based on the proof before this Court, the case of *Insituform* controls. In *Insituform,* the cause of action was to collect a debt, and the focal point of the contract was established to be the plaintiff's home county, as all payments were due there, sales were reported there, and meetings were held there. While *Nickell,* and *Forrest Erectors, Inc., v. Holston Glass Company, Inc.,* 2011 WL 5550692 (Tenn. Ct. App. Nov. 14, 2011), differed on the facts from *Insituform.* They also held the general rule is that, in a debt collection case, venue is proper where the debt is to be paid. Stott argues that this is not a simple debt collection case, but rather more complicated like the cause of action in *Nickell* or *Forrest*, because the very existence of the debt is disputed by him. We note, however, that Stott did not, in his affidavit nor in any other form of proof[3] dispute that he owed commissions to Masquerade as Masquerade alleged. He merely stated that there was no written contract, that his work was done outside Tennessee, and that he never lived in Tennessee, but he did admit that he worked for Masquerade organizing fundraising jewelry shows in the western U.S., and that he received jewelry from Masquerade and other vendors which was shipped to him. He does not dispute there was an oral contract, wherein he agreed that Masquerade would be formed and headquartered in Knox County, and that he agreed to sell jewelry for Masquerade and pay commissions to Masquerade on those sales. Further, payment for the same would be made in Knox County, and under the terms of the oral contract he agreed that his sales would be reported to Knox County, and agreed to attend regular meetings in Knox County. Also, he owed commissions to Masquerade. As such, the undisputed proof shows that this was an action to collect a debt, i.e. commissions owed by Stott to Masquerade, and that the debt was to be paid in Knox County as was established by the parties' oral contract and their course of dealing. In the absence of any countervailing proof by defendant, we hold that this case is one for collection

---

[3]Contrary to defendant's position on the first issue, he argues in his briefs we should consider the Sessions Court record on this issue.

of a debt and that venue is proper where the debt was to be paid, i.e. Knox County. *See Insituform, Nickell*, and *Forrest*.

We hold the Trial Court erred in holding that venue was not proper in Knox County.

We reverse the Trial Court and remand for further proceedings consistent with this Opinion.

The cost of the appeal is assessed to Steve Stott.

_____
HERSCHEL PICKENS FRANKS, P.J.